1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CHRISTOPHER CARREA, JR.,**<br><br>        **Petitioner,**<br><br>    **vs.**<br><br>**MATTHEW CATE, Secretary,**<br><br>        **Respondent.** | Civil No.  10-cv-0928-WQH(RBB)<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE PETITION FOR WRIT OF HABEAS CORPUS [ECF NO. 1]** |

Christopher Carrea, Jr. ("Carrea"),[1] proceeding pro se and in forma pauperis, seeks 28 U.S.C. § 2254 habeas relief from his June 2007 conviction in San Diego County Superior Court Case No. SCE269321 for inflicting corporal injury on a cohabitant and from his seven-year sentence. Carrea represented himself at his jury trial. His federal Petition alleges seven grounds for relief. (Pet. 6-33, ECF No. 1.) Respondent filed an Answer opposing any habeas relief (ECF No. 15), and Carrea filed a Traverse (ECF No. 21). Respondent concedes the Petition was timely filed and that, "with the possible exception of ground three," Carrea's claims are exhausted.

---

[1] Petitioner refers to himself in his federal filings as "Christopher Carrea, Jr." (Pet. 1, ECF No. 1; Traverse 1, ECF No. 21.) The Court refers to him in the Report and Recommendation in that manner, as adopted in the case caption, although he was referred to in state trial court proceedings as "Carre Christopher, Jr." and "Mr. Christopher." (See Lodgment No. 2, Rep.'s Tr. vol. 1, 1, Apr. 20, 2007; see also, e.g., Lodgment No. 3, Rep.'s Augmented Tr., vol. 1 75, May 29, 2007.) The California Court of Appeal and the California Supreme Court both refer to Petitioner as Christopher Carrea, Jr. (See Lodgment No. 14, People v. Carrea, No. D051337, slip op. at 2 (Cal. Ct. App. May 15, 2009); Lodgment No. 18, People v. Carrea, No. S173928, order (Cal. Aug. 31, 2009).)

(Answer 2, ECF No. 15.)  The Court has reviewed the pertinent portions of the record and controlling legal authority.  For the reasons discussed below, it is recommended that the Petition be **DENIED**.

## I.        FACTUAL AND PROCEDURAL BACKGROUND

In its May 15, 2009 reasoned decision resolving both Carrea's direct appeal and his concurrent habeas petition, the California Court of Appeal summarized the facts:

> In December 2006 appellant was living in an apartment with his girlfriend Barbara Brown.  Late in the evening of December 4, 2006, appellant and Brown drove to appellant's cousin's house.  However, upon arriving at his cousin's house appellant noticed police activity in the area; appellant and Brown decided to return to their apartment.  On the drive back to the apartment, appellant and Brown got into an argument over appellant's accusation that Brown had been unfaithful.  Because she was afraid of appellant, Brown admitted she had been unfaithful and appellant responded by telling Brown he was going to "get you" or "hurt you."  According to Brown, appellant then hit her in the eye with his closed fist.

> When appellant and Brown went back to the apartment, Brown was too afraid to call police or otherwise report the incident.  At around 8:00 the next morning, appellant called the agency where Brown worked as a home health care assistant and told the agency Brown would not be in for three or four days.  At that point Brown was still upset and unable to open her eye.

> After calling Brown's employer, appellant went back to sleep.  Brown then went to the apartment manager's office and asked to use the phone there to call the police.  Brown was nervous and upset.  After observing Brown's demeanor and her black eye, the manager summoned a security guard.  Brown told the apartment manager and the security guard that appellant had hit her in the eye.  The security guard lent appellant his cell phone and Brown called 911.  Police and paramedics responded to the call.  Although Brown was not taken to a hospital, the police took photographs of Brown's injuries and arrested appellant.

> Appellant was charged with inflicting corporal punishment on a cohabitant ([Californa Penal Code] § 273.5), false imprisonment ([Californa Penal Code] § 236) and violating the terms of his parole on a prior conviction.  Following a preliminary hearing, appellant was held to answer on the corporal punishment and criminal threat allegations, including allegations that, within the previous seven years, he had suffered a corporal punishment conviction and had suffered two prior prison terms within the meaning of [California Penal Code] sections 667.5, subdivision (b), and 668.

> After being admonished by the trial court, appellant exercised his right to represent himself.  The trial court denied his motions to dismiss for failure to bring the case to trial within the period required under [California Penal Code] § 1381,for ancillary services, and for discovery of *Pitchess* materials.  The trial court granted the prosecution's motion to admit evidence of appellant's prior acts of domestic violence and the recording of Brown's 911 call.  The trial court also permitted the apartment manager and security guard to testify as to the statements Brown made to them.  At trial, the trial court declined appellant's request to put Brown's medical records into evidence and examine her with respect to her medical condition.

2

[On June 1, 2007], [t]he jury found appellant guilty of corporal punishment of a cohabitant but was unable to reach a verdict on the allegations he had made criminal threats. After continuing the sentencing hearing once, the trial court sentenced appellant to the upper term of five years on the corporal punishment conviction and two consecutive one-year sentences on each of the two prior prison term enhancements. The trial court ordered that the seven-year sentence be served concurrent with appellant's parole revocation. Finally, the trial court, relying on a calculation provided by the probation department, awarded appellant a total of 199 days of custody credit.

(Lodgment No. 14, People v. Carrea, No. D051337, slip op. at 2-4.)

Appointed counsel appealed Carrea's conviction and sentence alleging the following: instructional error; five abuse of discretion claims (erroneous admission of hearsay evidence, denial of a motion to dismiss the charges, interference with Carrea's pro per privileges and access to witnesses, denial of a second request for a continuance of his sentencing, and interference with his ability to present a defense), purportedly resulting cumulatively in a violation of his due process rights; erroneous imposition of the upper-term sentence; and failure to award all the custody credits to which he was entitled. (Lodgment No. 4, Appellant's Opening Brief, People v. Carrea, No. D051337 (Cal. Ct. App.).)

On September 2, 2008, before his appeal was decided, Carrea filed a pro se habeas petition in the court of appeal alleging seven grounds for relief: deprivation of his speedy trial rights and purposeful discrimination, violation of his Sixth Amendment right to an impartial judge, prosecutorial misconduct, systematic exclusion of blacks from juries, deprivation of procedural due process through obstruction of his attempts to make objections during jury selection and limiting his trial witnesses, prosecutorial intimidation of witnesses, and denial of compulsory process due to inadequate ancillary services. (Lodgment No. 5, Carrea v. Cate, No. D053630 (Cal. Ct. App. filed Sept. 2, 2008) (petition for writ of habeas corpus).) On December 9, 2008, Carrea filed a supplemental exhibit, a declaration from Sandra Thomas, a defense witness describing Barbara Brown's reputation and personal observations about the victim's relationship with Carrea. (Lodgment No. 9, Carrea v. Cate, No. D053630 (Cal. Ct. App.) (application for supplemental exhibit in support of habeas corpus).) Thomas stated she had appeared at Carrea's trial but left the courthouse because she felt intimidated when she was told she "should go into a room and talk to the prosecution's investigator." (Id.) Respondent filed a letter response to Carrea's habeas petition,

as instructed by the court.  (Lodgment No. 10, <u>Carrea v. Cate</u>, No. D053630 (Cal. Ct. App. filed Apr. 30, 2009).)  Carrea responded.  (Lodgment No. 11, <u>Carrea v. Cate</u>, No. D053630 (Cal. Ct. App. filed May 11, 2009).)

By order entered May 15, 2009, the court of appeal entered its reasoned decision disposing of both the appeal and the consolidated habeas petition.  (Lodgment No. 14, <u>Carrea v. Cate</u>, No. D053630, slip op. at 26.)  The court affirmed the judgment in all respects, except for the custody credits issue.  (<u>Id.</u>)  "Rather than attempting to resolve the apparent conflict in the record as to how long appellant was in custody before sentencing and, in an abundance [of] caution, we remand [for recalculation] as to the credit issue only."  (<u>Id.</u> at 24.)  Carrea's appellate counsel unsuccessfully petitioned for rehearing.  (Lodgment No. 15, <u>People v. Carrea</u>, No. D051337 (Cal. Ct. App. dated May 29, 2009) (appellant's petition for rehearing); Lodgment No. 16, <u>People v. Carrea</u>, No. D051337 (Cal. Ct. App. June 9, 2009) (order denying rehearing).)

On June 16, 2009, counsel petitioned the California Supreme Court for review, raising eight issues:  whether the statutory definition of "cohabiting" under California Penal Code § 273.5 was proven, whether a clarifying instruction is needed "in cases where the distinction between cohabiting and dating relationships is at issue," whether a 911 call made hours after the events qualifies as competent evidence under a hearsay exception, whether the prosecution improperly delayed bringing charges "to avoid the time constraints of [California Penal Code] section 1381," what services must be provided to a pro per criminal defendant, whether the prosecution interfered with Carrea's right to present a complete defense "by warning the complaining witness that she could be prosecuted if she changed her story and advising defense witnesses to stay and talk to the prosecutors before testifying on appellant's behalf," whether the trial court's limitation of Carrea's "cross-examination of the complaining witness under Evidence Code section 352 violated [his] fundamental right to meaningful confrontation," and whether the sentencing proceedings satisfied due process when the court denied Carrea's second continuance request and imposed the upper-term sentence.  (Lodgment No. 17, <u>People v. Carrea</u>, No. S173928 (Cal. dated June 16, 2009) (petition for review).)  That court summarily denied the petition without citation to authority.  (Lodgment No. 18, <u>People v. Carrea</u>, No. S173928, order at 1(Cal. Aug. 26, 2009).)

1    While Carrea's petition for review in the California Supreme Court was pending, he filed a

2    pro se habeas petition there.  (Lodgment No. 19, <u>Carrea v. Cate</u>, No. S174661 (Cal. filed July 15,

3    2009) (petition for writ of habeas corpus).)  He raised seven grounds for relief, alleging a denial of

4    equal protection through purposeful discrimination and a violation of his speedy trial rights;

5    systematic exclusion of blacks from juries in San Diego County, in violation of the Sixth and

6    Fourteenth Amendments; procedural due process violations by the trial court in denying his

7    motions, circumscribing his objections, and abusing its discretion in rejecting his subpoenaed law

8    enforcement witnesses; prosecutorial intimidation of defense witnesses and of the victim, Barbara

9    Brown; denial of compulsory process for obtaining witnesses in his favor; imposition of an illegal

10   sentence; and denial of discovery of police records from the files of testifying officers, in violation

11   of the Fifth, Sixth, and Fourteenth Amendments.  (<u>Id.</u>)  The California Supreme Court summarily

12   denied habeas relief on December 2, 2009.  (Lodgment No. 20, http://appellatecases.courtinfo.ca.

13   gov (select supreme court; then search by case number and follow to docket (visited Sept. 30,

14   2010).)

15   Ground one of Carrea's April 28, 2010 federal Petition alleges the State of California "only

16   allow[s] white citizens the speedy trial right pursuant to [California Penal Code §] 1381, but deny

17   [sic] minorities the same right," in violation of the Fourteenth Amendment.  (Pet. 6, ECF No. 1.)[2]

18   Ground two asserts that the trial court and San Diego County "systematically exclude blacks from

19   the jury," in violation of the Sixth and Fourteenth Amendment.  (<u>Id.</u> at 18.)  Ground three alleges

20   Carrea is "illegally incarcerated" because the trial court "refus[ed] to allow the Petitioner to have

21   witnesses in his behalf," in violation of the Sixth Amendment.  (<u>Id.</u> at 24.)  The fourth ground for

22   relief is that the prosecution, "on the record," intimidated and threatened both their witness and

23   Carrea's with jail time.  (<u>Id.</u> at 26.)  Next, as ground five, Petitioner claims he was denied pro per

24   ancillary services, compulsory process, and access to legal authority.  (<u>Id.</u> at 28.)  Ground six

25   alleges he received an illegal upper-term sentence imposed by the trial judge rather than the jury.

26   (<u>Id.</u> at 31.)  Finally, his seventh ground for relief is that the denial of discovery of police

27

28   _____

[2]   Page numbers for docketed materials cited in this Report and Recommendation refer to those assigned by the Court's electronic case filing system.

10cv0928

1 department records violated due process and the Fifth, Sixth, and Fourteenth Amendments.[3]  (Id. at

2 33.)

3 **II.    DISCUSSION**

4        **A.    Legal Standards**

5        A federal court "shall entertain an application for a writ of habeas corpus in behalf of a

6 person in custody pursuant to the judgment of a State court only on the ground he is in custody in

7 violation of the Constitution or laws or treaties of the United States."  28 U.S.C.A. § 2254(a) (West

8 2006).  The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") controls review of

9 Carrea's habeas petition. See Lindh v. Murphy, 521 U.S. 320, 322-23 (1997).   AEDPA imposes a

10 " 'highly deferential standard for evaluating state-court rulings,' " requiring "that state-court

11 decisions be given the benefit of the doubt."  Woodford v. Visciotti, 537 U.S. 19, 24 (2002)

12 (quoting Lindh, 521 U.S. at 333 n.7); see Miller-El v. Cockrell, 537 U.S. 322, 340 (2003)

13 ("Factual determinations by state courts are presumed correct absent clear and convincing

14 evidence to the contrary . . . .") (citing 28 U.S.C. § 2254(e)(1)).

15        A petitioner can obtain federal habeas relief only if the result of a claim adjudicated on the

16 merits by a state court "was contrary to, or involved an unreasonable application of, clearly

17 established Federal law, as determined by the Supreme Court of the United States[,]" 28 U.S.C. §

18 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence

19 presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).  To be found unreasonable under

20 28 U.S.C. § 2254(d)(1), application of the precedent "must have been more than incorrect or

21 erroneous," it "must have been 'objectively unreasonable.' "  Wiggins v. Smith, 539 U.S. 510, 520-

22 21 (2003) (citations omitted); see Cullen v. Pinholster, __ U.S. __, __, 131 S.Ct. 1388, 1398

23 (2011) ("[R]eview under 28 U.S.C. § 2254(d)(1) is limited to the record that was before the state

24 court that adjudicated the claim on the merits.").  A decision is "contrary to" federal law if (1) it

25 applies a rule that contradicts governing Supreme Court authority, or (2) it "confronts a set of facts

---

26   [3] Carrea's Petition lists seven grounds for relief.  (Pet., ECF No. 1.)  His memorandum of points and
authorities is an exact copy of his June 16, 2009 petition for review to the California Court of Appeal, which
27 enumerates eight grounds.  (Compare Pet. 6-33, ECF No. 1, with id. Attach. #1 Mem. P. & A. Supp. Habeas
Corpus i-ii.)  The Court restricts its review to the grounds contained in the Petition, which excludes the purely
28 state law issues raised by Carrea's jury instruction challenges and certain evidentiary rulings.

that are materially indistinguishable from" a Supreme Court decision but reaches a different result. Early v. Packer, 537 U.S. 3, 8 (2002) (citations omitted); see Williams v. Taylor, 529 U.S. 362, 404-06 (2000) (distinguishing the "contrary to" standard from the "unreasonable application" standard); see also Bell v. Cone, 535 U.S. 685, 694 (2002).  In deciding whether relief is warranted, federal courts reviewing unconstitutional trial errors apply the standard announced in Brecht v. Abrahamson, 507 U.S. 619, 623 (1993), "uniformly in all federal habeas corpus cases under § 2254."  Bains v. Cambra, 204 F.3d 964, 977 (9th Cir. 2000) ("a substantial and injurious effect or influence in determining the jury's verdict").

       "We construe 'postcard' denials . . . to be decisions on the merits."  Gaston v. Palmer, 417 F.3d 1030, 1038 (9th Cir.2005), modified on other grounds, 447 F.3d 1165 (9th Cir. 2006). "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable [legal or factual] basis for the state court to deny relief."  Harrington v. Richter, __ U.S. __, __ 131 S.Ct. 770, 784 (2011).  Federal courts apply AEDPA standards to the "last reasoned decision" by a state court addressing the claim. Campbell v. Rice, 408 F.3d 1166, 1170 (9th Cir. 2005); see also Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.")

       **B.     Ground One:   Speedy Trial, Equal Protection, and Impartial Judge Violations**

       On April 20, 2007, the trial court denied Carrea's motion to dismiss the charges for failure to bring him to trial within ninety days of his arrest, a purported violation of California Penal Code § 1381.  (Lodgment No. 1, Clerk's Tr. at 21-31, 255; Lodgment No. 2, Rep.'s Tr. vol. 1, 12-13.) Here, Carrea argues that bringing him to trial "beyond the statutory 90 days limit" violated equal protection, the statute is unconstitutionally vague, and failure to enforce the timing limitation was judicial misconduct.  (Pet. 7, 11-17, ECF No. 1.)

       The Sixth Amendment to the United States Constitution includes the guarantee that "[i]n all criminal prosecutions" the "accused shall enjoy the right to a speedy and public trial . . . ."  U.S. Const. amend. VI.

10cv0928

1

> [Federal courts] do not establish procedural rules for the States, except when
> mandated by the Constitution.  We find no constitutional basis for holding that the
> speedy trial right can be quantified into a specified number of days or months.  The
> States, of course, are free to prescribe a reasonable period consistent with
> constitutional standards, but our approach must be less precise.

2

3

4

Barker v. Wingo, 407 U.S. 514, 523 (1972).

5

As summarized by the court of appeal, Carrea was arrested on December 5, 2006.  His

6

parole in a prior case was consequently revoked, and he was released into the custody of the

7

Department of Corrections on December 18, 2006, to serve his time on the parole revocation.

8

(Lodgment No. 14, People v. Carrea, No. D051337, slip op. at 14.)  "Although no new complaint

9

alleging violation of [California Penal Code] section 273.5, subdivision (a) had been filed, on

10

December 20, 2006, appellant sent the district attorney's office a demand that he be brought to trial

11

within 90 days as he believed was required by [California Penal Code] section 1381." (Id.)  The

12

district attorney's office did not file a complaint charging Carrea with the new crime until

13

March 7, 2007.  (Id.)  He was arraigned on March 22, 2007, after the trial court modified the

14

complaint to reflect that Carrea would not be held to answer the false imprisonment charge,

15

deemed the complaint to be an information, and granted Petitioner's request to represent himself.

16

(Lodgment No. 1, Clerk's Tr. at 1-3, 251-52.)  The court indicated Carrea should be provided with

17

the assistance of an investigator and a runner through Private Conflict Counsel ("PCC").  (Id.)

18

> Relying on his earlier demand for a trial, on April 5, 2007, [Carrea] filed a motion
> to dismiss the complaint on the grounds the time in which to bring [him] to trial
> under section 1381 had passed.  In arguing his motion, [he] asserted the district
> attorney's office had been guilty of unreasonable delay in filing the complaint.  The
> trial court denied the motion.  On appeal [Carrea] argues that the motion should
> have been granted because the prosecution delayed filing the complaint and because
> it failed to bring the case to trial within 90 days of appellant's section 1381 demand.

19

20

21

22

(Lodgment No. 14, People v. Carrea, No. D051337, slip op. at 14.)

23

Carrea asserted that his "speedy trial rights" had been denied and that he had been

24

"seriously prejudiced due to the fact that the DA [had] taken so long to charge this case.

25

(Lodgment No. 2, Rep.'s Tr. vol. 1, 3:21-25.)  The trial court explained to Carrea his

26

misunderstanding of California Penal Code section 1381 at an April 20, 2007 hearing.  (Id. at 1-

27

6.)

28

> MR. CHRISTOPHER:  I had a parole violation about this case.

10cv0928

1    THE COURT:  Not on this case?

2    MR. CHRISTOPHER:  Yeah, due to this case.

3    THE COURT:  This was the basis for the parole violation?

4    MR. CHRISTOPHER:  Yes,

5    THE COURT:  Okay.  [¶]  But they hadn't filed this case yet, but the Parole
     Board took it into consideration and rolled you up, for how long?

6
     MR. CHRISTOPHER:  For 10 months.
7
     THE COURT:  So you're still doing that?
8
     MR. CHRISTOPHER:  Yes.
9
     THE COURT:  Okay.  [¶]  So there's no merit to your 1381, if that's the
10   factual situation.

11   (Lodgment No. 2, Rep.'s Tr. vol. 1, 2:19-3:7.)

12       The trial court continued:

13       THE COURT:  . . . I'm now going to make my ruling to tell you what the
         decision is.
14
         This happened in December, 2006. This is all of April, 2007.  This is not an
15   inordinately long period of time.  In fact, the complaint was filed, apparently, back
     in March.  So a long period of time has not gone by.  They have . . . an obligation to
16   proceed in a reasonably prudent manner within that period of the statute of
     limitations [which had not yet run], but there is nothing about this period of time
17   which violated that.  The fact that you were incarcerated for that parole violation
     matters not.  The 1381 and the case is specific and I will site [sic] it to you People
18   versus Eldridge, 52 Cal.App.4th 91 [1997]; section 1381.

19       . . . .

20       THE COURT:  I'm not going to read [Eldridge, 52 Cal.App.4th at 91] slow
     so that you can write it down. . . . It states that "Section 1381 assumes that an
21   accusatory pleading is on file," there was nothing on file here to respond to your
     1381.  Your motion as to that issue is denied.  As a practical matter, it's moving
22   along at a reasonable pace.

23   (Lodgment No. 2, Rep.'s Tr. vol. 1, 4:28-5:15, 6:3-10.)

24       The state court of appeal found no error in the denial of Carrea's motion to dismiss, no

25   unreasonable delay in filing the complaint three months after his arrest, and no prejudice from the

26   time lapse.  In particular, applying California law, the court concluded the complaint was filed

27   well within the California Penal Code's statute of limitations, and the delay did not expose him to

28   additional imprisonment because, among other things, his ultimate sentence was to be served

9

concurrently with the sentence resulting from his parole revocation.  (Lodgment No. 14, <u>People v. Carrea</u>, No. D051337, slip op. at 14-15.)  "Appellant's right to a speedy trial under section 1381 did not attach until the complaint was filed," so "his pre-complaint demand did not trigger the 90-day time period provided for by section 1381."  (<u>Id.</u> at 15 (citing <u>People v. Belton</u>, 6 Cal. App. 4th 1425, 1432-33, 8 Cal. Rptr. 2d 669, 674 (1992)).)  The legal issues Carrea raises predicated on purported violations of state law are not cognizable on federal habeas review.  <u>See Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); <u>see also</u> <u>Swarthout v. Cooke</u>, __ U.S. __, __, 131 S.Ct. 859, 862-63 (2011) (holding that the application of state law beyond what the Constitution demands is not a federal concern).

Even if the Court were to address Carrea's speedy trial claim and apply federal standards, habeas relief should be denied.  The constitutional right to a speedy trial serves three primary interests:  "[1] to prevent oppressive pretrial incarceration; [2] to minimize anxiety and concern of the accused; and [3] to limit the possibility that the defense will be impaired."  <u>Barker</u>, 407 U.S. at 532.  "[A]ny inquiry into a speedy trial claim necessitates a functional analysis of the right in the particular context of the case:  'The right of a speedy trial is necessarily relative.' "  <u>Id.</u> at 522 (citation omitted).  "The approach we accept is a balancing test . . . ."  <u>Id.</u> at 530.

> To determine whether a defendant's right to a speedy trial has been violated a court must weigh the following factors:  "[1] whether delay before trial was uncommonly long, [2] whether the government or the defendant is more to blame for the delay, [3] whether, in due course, the defendant asserted his right to a speedy trial, and [4] whether he suffered prejudice as the delay's result."

<u>United States v. Aguirre</u>, 994 F.2d 1454, 1455 n.1 (9th Cir. 1993) (quoting <u>Doggett v. United States</u>, 505 U.S. 647, 650 (1992)); <u>see</u> <u>Barker</u>, 407 U.S. at 530 ("Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.").

Carrea was arrested on December 6, 2006, for striking and injuring Brown the night of December 4-5, 2006.  He remained incarcerated thereafter, as a parole violator, before being charged with the new offense in March 2007.  (Lodgment No. 14, <u>People v. Carrea</u>, No. D051337, slip op. at 2-3; Lodgment No. 1, Clerk's Tr. at 1-3.)  He was tried in May 2007, within two months of being charged and within five months of his arrest, periods objectively reasonable.   As found

by the California Court of Appeal, interpreting state law, which this Court must accept, Carrea's statutory right to be tried within ninety days of being charged was not triggered during the period of delay of which he complains. He prematurely asserted his right to a speedy trial, that is, before formal charges were filed. In addition, he has demonstrated no actual impairment of his ability to prepare his case adequately that he can attribute to the time lapse between the offense and his trial, such as the death or disappearance of a witness or the loss of particular evidence. His pretrial incarceration was not oppressive or unjustified, and he does not show the anxiety and concern he may have experienced exceeded that of any other criminal defendant awaiting trial. See United States v. Drake, 543 F.3d 1080, 1086 (9th Cir. 2008); see Barker, 407 U.S. at 532. It is recommended relief on his speedy trial claim be **DENIED**.

In denying all relief associated with this claim, the California appellate court did not expressly address Carrea's additional contentions that the state statute is unconstitutionally vague or that the state unconstitutionally "allows white individuals" the benefit of the speedy trial statute, but not minorities like himself. (See Lodgment No. 5, Carrea v. Cate, No. D053630 (petition for writ of habeas corpus at 3).) If the dispositive state court decision reaches the merits of a claim "but provides no reasoning to support its conclusion," federal habeas courts "independently review the record to determine whether the state court clearly erred in its application of Supreme Court law," although "we still defer to the state court's ultimate decision." Pirtle v. Morgan, 313 F.3d 1160,1167 (9th Cir. 2002); see Harrington, __ U.S. at __, 131 S.Ct. at 784-85.

Carrea does not identify any particular deficiency in the codified language to support his statutory vagueness allegation, and he offers no factual basis to elevate his conclusory allegation above mere speculation. (See Pet. 6-7, ECF No. 1.) To prevail on an equal protection claim, the claimant must demonstrate that similarly situated persons are actually treated differently, but Carrea merely states categorically that "California applies a statutory speedy trial rights [sic] under California Penal Code 1381 to whites but not to blacks."[4] (Traverse Attach. #1 Mem. P. & A. 6:15-17, ECF No. 21.) Moreover, as discussed above, he has not shown he was actually deprived

---

[4] In his Traverse, Carrea contends that racial discrimination pervasively infects the judiciary. (Traverse Attach. #1 Mem. P. & A. 6-9, ECF No. 21.) Sweeping narratives are immaterial to the resolution of his claims under AEDPA standards, and the Court disregards them.

1  of a "speedy trial" as guaranteed by the federal Constitution, foreclosing relief on these theories.

2  Petitioner's companion claim that his trial judge was not impartial because the finding that Carrea's

3  speedy trial rights were not violated was allegedly "unreasonable" must fail for the same reasons.

4  (Pet. 15, ECF No. 1.)

5          The state courts reasonably found the facts in light of the record and concluded that no

6  unreasonable delay occurred in the timing of the formal criminal charges or their prosecution.

7  Furthermore, Petitioner has not established any constitutional violation under the theories

8  challenging the statute or its application.  For these reasons, habeas relief on ground one should be

9  **DENIED**.

10         **C.        Ground Two:  Systematic Exclusion of Black Jurors**

11         Carrea alleges, "The trial court and San Diego County, systematically exclude[] blacks

12  from the jury in violation of . . . both the Sixth and Fourteenth Amendments . . . ." (Pet. 18, ECF

13  No. 1.)   He contends the trial judge excused one of two blacks called for jury service in his case,

14  then the second African-American had to be excused.  (Id. at 19.)  Petitioner alleges the venire

15  lacked a fair cross section of the community and argues the underrepresentation of blacks on his

16  jury was intentionally discriminatory, in violation of his equal protection rights.  (Id. at 19-23.)  In

17  support of this claim, Carrea relies on his personal observations from the "five jury trials in the San

18  Diego area" he has had "in the past forty years."  (Id. at 22.)

19         The voir dire proceedings are in the record.  (See Lodgment No. 3, Rep.'s Augmented Tr.

20  vol. 1, 1-74.)  During a recess early in the jury selection process, Carrea complained about the

21  composition of the panel:

22              THE DEFENDANT:  I don't think it's a fair cross-section of the community.
          We have two blacks.

23              THE COURT:  Well, the juror is drawn randomly from the jurors who are
24          assembled downstairs.

25              THE DEFENDANT:  And I – the whole thing of every time a black
          defendant comes before the jury system, there is either one or two, and
26          systematically – I mean, that is deliberately – that is deliberate discrimination.  I
          want it on the record that I believe that deliberate discrimination continues and has
27          happened in this case.  Two blacks on the jury panel of how many?

28              THE COURT:  We have 42 persons.

THE DEFENDANT:  Forty-two.  That is not even 5 percent.  That would be – I mean, blacks consist of more than 5 percent of the population of this county.  How is it that every time a jury is selected, we have less than 5 percent on the jury panel?  That seems to be done deliberately.  You can't tell me that blacks are not available.

THE COURT:  Is that your motion?

THE DEFENDANT:  Exactly.

THE COURT:  People wish to respond?

[THE PROSECUTOR]:  Just that, clearly, the way that the selection process is done is random, regardless of race, and based on that issue, we would ask that the court deny that motion.

THE DEFENDANT:  Why does the prosecutor always say the court has to do this?  I think the prosecutor should put forth her argument and let the court decide.

THE COURT:  I will decide.  I don't have to do anything.  I make my decision based on the law, and I find that in this particular instance that the defendant has not made a prima facie showing that the panel does not represent a cross-section of the community.  He has not satisfied the three elements set forth in *Duren versus Missouri* and the other cases that follow, and so that motion is denied at this time.

(Id. at 27-28.)

Voir dire based on the individual biographical, family, and employment details from each prospective juror's questionnaire continued.  (Id. at 28-57.)  Carrea and the prosecutor then had the opportunity to question the jurors.  (Id. at 57-68.)  No juror from the first group was excused for cause at the behest of either side, id. at 68-69, but the court excused juror number two, an African-American man, because he was a head coach whose student had qualified for a special state meet out of town.  (Id. at 31-33.)  "I would be inclined to excuse him for cause because of that, because we can't recess the jury for three days, waiting for the travel to occur."  (Id. at 32.)  Neither Carrea nor the prosecutor objected.  (Id.)  The court also excused a female juror on medical grounds.  (Id. at 53.)  The prosecutor then exercised her first two peremptory challenges -- the only two peremptories by the prosecution during the entire jury selection process -- and Carrea exercised his first two peremptory challenges.  (Id. at 70-72.)  After the prosecutor accepted the panel with no other challenge, Carrea made a Wheeler motion.  (Id.)  A successful motion pursuant to People v. Wheeler,  22 Cal. 3d 258, 280, 583 P.2d 748, 764, 148 Cal. Rptr. 890, 905 (1978),

10cv0928

1   requires a showing of "a strong likelihood" that a prosecutor's exercise of peremptory challenges

2   was based on "their group association."

3        "[R]acial discrimination in jury selection offends the Equal Protection Clause . . . .  But the

4   defendant does have the right to be tried by a jury whose members are selected pursuant to non-

5   discriminatory criteria."  <u>Batson v. Kentucky</u>, 476 U.S. 79, 85-86 (1986) (footnote omitted)

6   (citations omitted).   "[T]he State's privilege to strike individual jurors through peremptory

7   challenges, is subject to the commands of the Equal Protection Clause."  <u>Id.</u> at 89 (footnote

8   omitted).   "[A] *Wheeler* motion is the procedural equivalent of a *Batson* challenge in California."

9   <u>Paulino v. Castro</u>, 371 F.3d 1084, 1088, n.4 (9th Cir. 2004).  Carrea argued his <u>Wheeler</u> motion as

10  follows:

11             THE DEFENDANT:  The ethnic group has been excluded from the jury.

12             THE COURT:  And what ethnic group are you referring to?

13             THE DEFENDANT:  Afro-American.

14             THE COURT:  Who in particular are you referring to?

15             THE DEFENDANT:  There is not a single African-American on the panel.

16             THE COURT:  Is that the basis for your motion?

17             THE DEFENDANT:  Yes.

18             THE COURT:  Well, the motion would be denied because that's not the
       standard for a *Wheeler* motion.  The People have not exercised any peremptory
19     challenges as to African-Americans.  For the record, I will note that the only
       African-American, at least from appearance, who has been called into Seat 12,
20     would be Mr. Yarborough, who the court earlier excused for cause.  And there is
       another gentleman, I believe, in the panel but he has not yet been called into the
21     group of 20.

22  (Lodgment No. 3, Rep.'s Augmented Tr. vol. 1, 72:28-73:9.)

23        The prosecutor submitted, but Carrea made an additional argument:

24             THE DEFENDANT:  Yes.  *Johnson, Johnson versus California* case [545
       U.S. 162 (2005)], which was heard last year in the Supreme Court, states, if there is
25     an inference of discrimination, that the case should be dismissed, really.  How can
       we justify, year 2007, not one single African-American is on the jury panel and an
26     African-American Defendant?

27

28

1    THE COURT:  Your objection and your motion is noted for the record, but I

2 don't find that it rises to the level of a *Wheeler* motion, and the motion is denied.

3 (Id. at 73:25-74:5.)[5]

4    Voir dire resumed.  The prosecutor continued to accept the entire panel as constituted after

5 her two initial peremptory challenges, while Carrea exercised eight more peremptory  challenges.

6 (Id. at 69-72, 79-81, 114-116.)  The only African-American in the jury pool, other than the coach

7 the court had previously excused for cause, was called to fill a position on the panel vacated by a

8 prospective juror Carrea had asked be excused.  (Id. at 81.)  It emerged during the court's

9 questioning that the prospective juror might have difficulty setting aside his past experience with

10 domestic violence.  (Id. at 109-110.)  When the court excused the jury to discuss whether the

11 parties had any issues with the new panel members that could be grounds for a challenge for cause,

12 Carrea reluctantly expressed his concern regarding the black juror's neutrality.  (Id. at 111.)  The

13 court observed:  "Well, I appreciate that you consider it a difficult decision, and I will note for the

14 record he is African-American, and he is one of the only two that we had."  (Id.)  The court

15 accepted Carrea's challenge for cause and excused the juror.[6]  (Id. at 111-114.)  Carrea thereafter

16 exercised three more peremptory challenges before his jury was selected, and he used an additional

17 two before the alternate jurors were chosen.  (Id. at 117-118.)

18

19

20    [5]  The trial court later clarified that although Carrea cited Wheeler as the basis for his motion, his

21 argument could be construed as a challenge to the composition of the entire jury pool, a challenge controlled
by a different legal standard, but the denial would still stand.  "[B]efore we recessed, Mr. [Carrea] raised what
he characterized as a *Wheeler* motion, . . . [but] when he argued the merits, it may more have gone to the issue

22 of whether the panel represents a cross-section of the community. . . .  I don't see that there is any change in the
circumstances and I still would be denying it if that is the basis of his motion.  I don't think he has presented

23 the three elements of *Duren* . . . that are required to show a prima facie case."  (Lodgment No. 3, Rep.'s
Augmented Tr. vol. 1, 75:22-76:6); see Duren v. Missouri, 439 U.S. 357 (1979).

24
   [6]  In his July 20, 2007 Motion For Mistrial And New Trial, among other things, Carrea expressed

25 dissatisfaction with the explanation the trial court gave for excusing the first black juror, contending a track
meet was not an important enough reason to be excused, leaving "one black that was so biased against the

26 defendant, the defendant didn't object to him leaving.  The defendant was not seeking an all black jury, but he
was seeking a jury of at least 10% black minimum.  The denial of this was a violation of the Fourteenth

27 Amendment," and he, "an Afro American was left without one single black on the jury," resulting in a
purportedly "extremely biased" jury.  (Lodgment No. 1, Clerk's Tr. at 0232, 0240.)  "While there is a right,

28 under the Equal Protection Clause, to have a jury drawn from a fair cross section of society, there is no right
to a jury of any particular composition."  Ruiz v. United States, 221 F.Supp.2d 66, 85 (D. Mass. 2002) (citing
Taylor v. Louisiana, 419 U.S. 522, 538 (1975)).

1    The record reveals that Carrea's prosecutor did not exercise any peremptory strike to

2  excuse a minority juror, foreclosing any argument she unconstitutionally manipulated the

3  composition of his jury through race-based discrimination.  Under either Wheeler or Batson,

4  Petitioner's claim fails to make out a prima facie showing, as found by the state courts.  The trial

5  court overruled Carrea's objection to a venire with just two potential jurors who were African-

6  American because he failed to show a systematic exclusion of racial minorities, an essential

7  element of the claim.  (Lodgment No. 3, Rep.'s Augmented Tr. vol. 1, 27-28 (citing Duren, 439

8  U.S. 357).)

9      In order to establish a prima facie violation of the fair-cross-section
       requirement, the defendant must show (1) that the group alleged to be excluded is a
10     "distinctive" group in the community; (2) that the representation of this group in
       venires from which juries are selected is not fair and reasonable in relation to the
11     number of such persons in the community; and (3) that this underrepresentation is
       due to systematic exclusion of the group in the jury-selection process.
12

13  Duren, 439 U.S. at 364.  The court of appeal denied this claim for the same reasons.

14     [P]etitioner contends that the San Diego jury pool systematically excludes African-
       Americans from the jury pool.  However, his claim of systematic exclusion is not
15     supported by anything other than conclusory allegations based on appellant's prior
       experience in San Diego criminal proceedings and thus does not provide an adequate
16     basis upon which to provide appellant with relief.

17  (Lodgment No. 14, People v. Carrea, No. D051337, slip op. at 25 (citing People v. Duvall, 9 Cal.

18  4th 464, 474, 886 P.2d 1252, 1258, 37 Cal. Rptr. 2d 259, 265 (1995)).)

19    Unlike in Duren, Carrea fails to demonstrate that any disproportion in the representation of

20  a cognizable group in San Diego County jury pools is due to their "consistent exclusion from the

21  jury wheel and at the venire stage . . . obviously due to the *system* by which juries [are] selected."

22  Duren, 439 U.S. at 367.  The Duren Court found the defendant there made out a prima facie case

23  of a fair-cross-section violation in circumstances where it was shown that women (a "distinctive

24  group") were systematically underrepresented in the final pools of prospective jurors in Jackson

25  County, Missouri, due to the operation of particular automatic exemption criteria the county used.

26  Id. at 366-67.  "The demonstration of a prima facie fair-cross-section violation . . . is not the end of

27  the inquiry into whether a constitutional violation has occurred."  Id. at 367.  Inasmuch as Carrea

28  has not identified any particular procedure or selection criterion that operates to systematically

exclude African-Americans from the jury pool in San Diego County, he cannot obtain federal habeas relief.  He cites no controlling United States Supreme Court authority the application of which would require a different result, and the Court must accord AEDPA deference to the state court's objectively reasonable factual findings.  28 U.S.C. § 2254(d).  Relief on ground two should be **DENIED**.

### D.   Ground Three:  Denial of Right to Present Defense Witnesses

Carrea alleges the trial court would not allow him to call as witnesses individuals from "the state of California highway patrol and the County of San Diego sheriff department," in violation of his Sixth Amendment right to present a defense.  (Pet. 24, ECF No. 1.)  He represents those witnesses would have testified "that no crime was reported on the alleged highway in which they have jurisdiction . . . ."  (Id.)  He contends his confrontation rights were violated by the trial court.  Petitioner complains that the court "allowed the prosecutor to bring there [sic] witness [from] the San Diego Police Department who testified he never went to the alleged highway crime scene[,]" and "stated no valid reason for allowing the prosecution to bring who ever he wanted[,] but refused the petitioner who ever he wanted."  (Id.)  Despite Carrea's repeated requests to call law enforcement witnesses for the defense, "[t]he judge of the trial stated all that she wanted was just the declaration of petitioner['s] witnesses."  (Id. at 24-25.)  Petitioner summarily asserts that had he been able to call certain highway patrol and sheriff department personnel, it "would have ma[de] a[n] enormous dif[f]erence in the outcome of the trial."  (Id. at 24.)

Respondent questions whether Carrea exhausted this claim in the California Supreme Court, but also argues the merits.  (Answer Attach. #1 Mem. P. & A. 5, ECF No. 15.)  A federal habeas court may not grant habeas relief on the merits of an unexhausted claim, but it may deny an unexhausted claim when "it is perfectly clear that the petitioner has no hope of prevailing." Cassett v. Stewart, 406 F.3d 614, 624 (9th Cir. 2005); see 28 U.S.C. § 2254(b).  Nevertheless, this claim is exhausted.

As ground three in the petition for habeas corpus relief filed with the California Supreme Court, Carrea complained of a violation of due process and his Fifth, Sixth, and Fourteenth Amendment rights because the trial judge refused to permit Petitioner to call witnesses from the

San Diego County Sheriff's Department and the California Highway Patrol.  (Lodgment No. 19,

Carrea v. Cate, No. S174661 (petition at 18).)  Neither the California Supreme Court nor the

California Court of Appeal addressed this claim.  (See Lodgment No. 20, http://appellatecases.

courtinfo.ca.gov (select supreme court; then search by case number and follow to docket);

Lodgment No. 14, People v. Carrea, No. D051337, slip op. 1-26.)  But Carrea and the trial judge

discussed the proposed witnesses.

> THE COURT: . . . [Carrea] wants to have evidence submitted that he sought records from the sheriff and police department or CHP for the date in question and they reported that there are no records, and that can done [sic] either by way of stipulation or by admitting the copy of the subpena and the custodian's declaration.
>
> . . . .
>
> [CARREA]:  Instead of bringing Jeff Johnson – I don't have to bring Jeff Johnson and Steve J. Barock to bring it in, right?
>
> THE COURT:  If the purpose of them testifying is that there are no police records for the date on your subpena –
>
> [CARREA]:  During the times that Barbara Brown testified that I was driving 70 miles down the freeway and got in a fight, neither department has any record of any of these things happening and that is definitely relevant.
>
> THE COURT: You can argue that to the jury, but the issue is, we don't need to bring those people in to verify that.
>
> [CARREA]:  I don't have to bring them in but if they choose, well, let's just leave it like that.
>
> THE COURT:  We'll either do it through stipulation or you can submit the exhibits.
>
> [CARREA]:  All right.

(Lodgment No. 2, Rep.'s Tr. vol. 4, 416-17.)

During the trial, however, Petitioner asked the court, "Will I be permitted to bring in the

California Highway Department?"  (Lodgment No. 2, Rep.'s Tr. vol. 5, 509.)  The trial judge

responded, "When it's your case, you can present evidence as we discussed."  (Id.)  In the course of

presenting his defense, Carrea's investigator testified that he subpoenaed records from the sheriff's

department and CHP of any reports of incidents involving Carrea the night of December 4-5, 2006,

and neither agency had any reports to produce.  (Id. at 576-78.)  It appears that no California court

explained the basis for denying Carrea's request to call law enforcement witnesses to testify.

10cv0928

1    Accordingly, this Court will "independently review the record to determine whether the state court

2    clearly erred in its application of Supreme Court law."  Pirtle, 313 F.3d at 1167.

3        As Respondent observes, reasonable limits  in conformity with procedural rules

4    constitutionally may be placed on a defendant's ability to present witnesses at trial.  (Answer

5    Attach. #1 Mem. P. & A. 6, ECF No. 15 (citing, inter alia, Taylor v. Illinois, 484 U.S. 400, 410-12

6    (1988)).)  Trial courts in both the state and federal systems have discretion to exclude evidence of

7    marginal value.  See Cal. Evid. Code §§ 210, 352 (West 2011); Fed. R. Evid. 402, 403.  Carrea

8    wanted to call the law enforcement witnesses to testify that "no crime was reported on the alleged

9    highway," and they "never went to the alleged highway crime scene."  (Pet. 24, ECF No. 1.)

10   Those facts were undisputed, and Carrea elicited that information during his cross-examination of

11   the prosecution's law enforcement witnesses.  The evidence supported the conclusion that the

12   charged crime occurred in a moving vehicle at night and that Brown did not report it until the next

13   morning.  As Respondent notes, the absence of a contemporaneous crime report does not prove no

14   crime occurred.  It was the jury's prerogative to give what weight it would to all the evidence.

15       Although Carrea argues that there "would have been a total of 5 witnesses for the petitioner

16   at the trial" if the court had not denied his request to call three law enforcement witnesses, and the

17   court "allowed the prosecution 12" trial witnesses, it cannot reasonably be said on that basis, or

18   from the trial record, that Carrea was deprived of the ability to present a defense.  (Traverse

19   Attach. #1, Mem. P. &. A. 12, ECF No. 21.)  It is not the number of trial witnesses that matters,

20   but rather their credibility and persuasiveness.

21       Even if the trial court committed an unconstitutional error in rejecting Carrea's request to

22   call law enforcement witnesses, federal habeas relief is unavailable unless the error had a

23   substantial and injurious effect or influence in determining the jury's verdict.  Brecht, 507 U.S. at

24   623; see Bains, 204 F.3d at 977.  His showing does not satisfy that requirement.  Any additional

25   testimony that no officer visited the highway crime scene and no crime was reported until several

26   hours later would have been cumulative evidence.  Furthermore, Carrea's jury received the

27   instruction:  "Do not simply count the number of witnesses who agree or disagree on a point and

28   accept the testimony of the greater number of witnesses . . . .  What is important is whether the

testimony or any other evidence convinces you, not just the number of witnesses who testify about

a certain point." (Lodgment No. 2, Rep.'s Tr. vol. 6, 637:20-638:2; Lodgment No. 1, Clerk's Tr. at

0145.) For all these reasons, the Court cannot find that the jury's verdict was substantially and

injuriously affected by the purported error of excluding those cumulative witnesses. Petitioner's

claim for habeas relief on ground three should be **DENIED**.

        **E.**        **Ground Four:  Prosecutorial Misconduct Through Intimidation and Threats**

Carrea complains that the trial court permitted two of his proposed witnesses to be

"intimidated," "threatened," and "harassed" by the prosecutor. (Pet. 26-27, ECF No. 1.) He also

alleges that the victim, Barbara Brown, testified against him out of fear due to "intimidation, threat

and coercion" because she "was told before she came in to testify she would go to jail." (Id. at 26.)

"The prosecutor even admitted she would more than likely send Barbra Brown to jail for perjury if

she changed her story." (Id.) The court of appeal summarized the pertinent facts:

> During trial, the trial court noted that two of appellant's witnesses were in
> the courtroom.  The trial court told the witnesses they could not be in the courtroom
> until they testified.  In addition, because appellant had not provided the prosecution
> with any contact information about any of his proposed witnesses, the trial court
> asked that the witnesses talk to the prosecutor's investigator.  The trial court stated:
> "So I would ask you, because you are witnesses in the case, the two of you to step
> outside, and I can't require you to talk to an investigator, but if you do, then that
> will help the case run more smoothly because the People will have an idea as to
> what the testimony is going to be."  The court further advised the witnesses the
> defense case would begin the following morning and that, in any event, they should
> return in the morning.
>
> The two witnesses left the courthouse before they could be interviewed by
> the prosecutor's investigator.  The trial court interpreted their departure as an
> unwillingness to be interviewed.  The trial court agreed an investigator could
> attempt to contact them to get their birthdates so the prosecutor could retrieve any
> criminal history.  One of the appellant's witnesses later returned and testified on
> appellant's behalf.

(Lodgment No. 14, People v. Carrea, No. D051337, slip op. at 19.)

The appellate court concluded that "neither the trial court nor the prosecutor improperly

harassed [Carrea's] witnesses or discouraged them from testifying." (Id. at 20.) California law

requires both the defense and the prosecution to " 'disclose the names and addresses of persons

whom they intend to call as witnesses at trial, if such information is known or is reasonably

accessible.' " (Id. (quoting In re Littlefield, 5 Cal. 4th 122, 136, 851 P. 2d 42, 51, 19 Cal. Rptr. 2d

248, 257 (1993)) (citing Cal. Penal Code § 1054.3(a)).)  Carrea failed to provide that information; therefore, it was not improper for the prosecutor, with the assistance of the trial court, to seek a pretrial interview with the defendant's witnesses before they testified.  The appellate court noted that "neither the trial court nor the prosecutor appear[s] to have suggested that any of appellant's witnesses were required to talk to the prosecutor's investigator."  (Id.)  On the basis of those reasonable factual findings from the record, to which this Court owes deference, the California Court of Appeal rejected the claim.

Carrea also contends:  "The prosecution['s] own witness stated on the stand under oath she was threaten[ed] with prosecution if she didn't say the petitioner did it.  (Barbara Brown.)." (Traverse Attach. #1 Mem. P. &. A. 13:22-24, ECF No. 21.)  The Court has reviewed Brown's trial testimony.  Brown was called as both a prosecution witness and a defense witness.  Among other things, while testifying as a prosecution witness, she stated that she and Carrea are "girlfriend/ boyfriend," had been romantically involved for over ten years, lived together at the time of the incident, and that she "love[d] him, care[d] a lot for him, and I'm just sorry this happened." (Lodgment No. 2, Rep.'s Tr. vol. 5, at 446-47.)  She described the escalating argument they had in the car when she denied Carrea's suspicions she was "fooling around with someone else," how she became scared when he threatened to hurt her, how he hit her in the eye with his fist while driving, and then continued on home.  (Id. at 447-51.)  Brown stated she was afraid because she "thought he was going to hit me just like he did."  (Id. at 451; see also id. at 463.)  She did not call the police when they got back to the apartment because the phone was not hooked up, and she did not have a working cell phone.  (Id. at 451.)  Under Carrea's cross-examination, she denied that the district attorney's office told her how she should testify. (Id. at 465.)  He repeatedly attempted to elicit evidence of prosecutorial intimidation, suggesting through the manner of his questioning that she was lying because she was afraid to testify truthfully:

> Q:  If you said – right now, this very second, if you said that I did not do any of this, what do you believe would happen to you?
>
> A:  I was told, you know, I could go to jail if I come in and –
>
> Q:  You would go to jail if you said I didn't do it?
>
> A:  Chris, just look at my eye, Chris.

. . . .

Q:  You were told . . . .  It's your understanding that if, at this very moment, you just said, "You know what, I was upset with Chris, I was angry with Chris, he had his ex-wife by the house or he spends too much time with his children, you know, he doesn't give me any time[.]["]

[THE PROSECUTOR]:  Objection.  The defendant is testifying and it misstates the evidence.

THE DEFENDANT:  I am asking her her belief.

THE COURT:  You need to ask the question rather than testify yourself.

[BY THE DEFENDANT]:  Q:  Under those conditions, do you believe that if you said, at this very moment, "Let me tell the truth, he did not do that," you believe that you would go to jail?

A:  I'm sorry, Chris.

Q:  Yes or no, Ma'am?

THE COURT:  If you understand the question.

THE WITNESS:  No, I don't understand the question.

BY THE DEFENDANT:  Q:  If you change your statements from what you told the police back then, if you change your statements, do you believe that you would go – that they would charge you with perjury or they would have the option of charging you with perjury?

A:  Yes, but I'm not –

Q:  Yes or no?

A:  Yes, yes.

Q:  Thank you.

(Id. at 465-67; see also id. at 480.)  ("Q:  . . . In this case were you coached by the prosecution?  A: No.  Chris.  Q:  Did the prosecution call you on more than a few occasions?  A:  Yes, they did.  Q: Did they tell you what they expected out of you?  A:  No.").)

Carrea attempts to characterize Brown's testimony as evidence the prosecution coerced her to testify that he hit her by threatening criminal prosecution for perjury if she changed her story from her original police report.  The transcript shows Petitioner relies on speculation rather than on any actual substantiating testimony from Brown.  On redirect, Brown denied that she told any of the five people or categories of people Carrea specifically inquired about that she would be

22

"fabricating this case."  (Id. at 572.)  On recross, she testified she never denied what happened, and she never told Carrea's father or other relatives "anything different than what [she] testified today." (Id. at 573.)  Brown's understanding that perjury is a criminal offense does not mean she lied under oath out of fear rather than recant. Carrea cannot bootstrap his unsupported inferences into a constitutional violation.

Finally, the record reflects, as reasonably found by the court of appeal, that Petitioner's witnesses were not required to meet with the prosecutor's investigator even for the limited purpose of obtaining contact or identification information.  As argued by Respondent, "Carrea advances no United States Supreme Court authority holding that the prosecution's reasonable attempts to obtain discovery information may violate a defendant's fair-trial rights," without which he cannot obtain federal habeas relief on this theory.  (Answer Attach. #1 Mem. P. & A. 7 (citing Carey v. Musladin, 549 U.S. 70, 75-77 (2006), ECF No. 15; see also 28 U.S.C. § 2254(d)(1).  It is accordingly recommended that relief on ground four be **DENIED**.

F.    **Ground Five:  Denial of Pro Per Ancillary Services, Compulsory Process to Obtain Witness, and Access to Legal Authority**

Under various theories, Carrea alleges he was denied procedural due process, equal protection, and a fair trial as a self-represented, indigent defendant.  He filed a "Motion For Pro Per Rights And Privileges" on April 18, 2007, seeking a court order to permit him to make phone calls, to have an assigned "runner and investigator" he could call, and that he be allotted more than four hours per week in the law library.  (Lodgment No. 1, Clerk's Tr. at 0032-0037.)  He also filed an unsuccessful "Application For Ancillary Services" pursuant to California Penal Code section 987.9, asking that he be given weekly phone cards during the course of the trial to "manage his case."  (Id. at 0103-0105.)  Petitioner contends that he "over and over again informed the trial court of the denial of access to telephone, law library, [and] witnesses," and that the pro per services through private counsel assigned to him were deficient.  (Pet. 29, ECF No. 1.)  He argues here:

10cv0928

1

2

3

> The County of San Diego was to provide the petitioner with ancillary services through the San Diego County Sheriff Department and San Diego County private conflict counsel. . . . The County of San Diego has an adopted policy and custom that if you are indigent and can't afford to defend your self due to ind[ige]ncy, that is to[o] bad . . . .

4

(Id. at 28.)

5   In particular, Carrea challenges the trial court's refusal to provide him with a $20.00 card

6   "to make phone calls to be sure all witnesses would appear due to the failure of private conflict

7   counsel, San Diego County Sheriff Dept. and the investigator, to provide a means to contact the

8   petitioner['s] witnesses[]" or, allegedly, even with a means for him to contact his PCC assistant.

9   (Id.) He also contends he "was only allowed two hour[s] a day two days of the week for law

10  library," a claim he attempts to frame as an equal protection violation by arguing the prosecution

11  had no similar restriction, purportedly creating "an unfair advantage in violation of equal

12  protection of the law.  (Id. at 30.)  The California Court of Appeal rejected this claim on the merits,

13  discussing the ancillary services rights of pro per defendants under California law and the Equal

14  Protection Clause.  (Lodgment No. 14,  People v. Carrea, No. D051337, slip op. at 15-16

15  (explaining the "similarly situated" persons requirement to make out a prima facie equal protection

16  violation) (citing, inter alia, People v. Blair, 36 Cal. 4th 686, 733-34, 115 P. 2d 1145, 1175, 31 Cal.

17  Rptr. 3d 485, 521-22 (2005)).)

18   The court acknowledged the Sixth Amendment ramifications of depriving a self-

19  represented defendant of all means to present a defense.  (Id. at 16); see also Milton v. Morris, 767

20  F.2d 1443, 1445-46 (9th Cir. 1985).  The state appellate court stated the "crucial question

21  underlying all of defendant's constitutional claims is whether he had reasonable access to the

22  ancillary services that were reasonably necessary for his defense."  (Lodgment No. 14,  People v.

23  Carrea, No. D051337, slip op. at 16 (quoting Blair, 36 Cal. 4th at 734, 115 P. 3d at 1175, 31 Cal.

24  Rptr. 3d at 522.)

25

26

27

28

> With these principles in mind, we turn to appellant's particular contentions. Appellant contends the trial court should have provided him with prepaid telephone calling cards in order to facilitate his access to his witnesses.  However, the record shows appellant had access to a telephone at the jail, that Private Conflict Counsel (PCC) would accept collect calls from appellant, and that the trial court directed that the PCC arrange for telephone calls between appellant and his witnesses in such manner as it saw fit.  In addition, we note that during the trial the trial court repeatedly gave appellant access to his father so that his father could assist him

24

preparing his defense.  Although these arrangements were not the ones appellant preferred, they provided appellant reasonable access to his witnesses.

Appellant also argues his access to the law library was limited and that the library lacked some of the resources he needed to prepare his defense.  As respondent points out, appellant had no apparent difficulty filing a number of motions, requests, letters, complaints, petitions and briefs during the course of the trial proceedings, amply supported by citations to authority.  Thus appellant's own vigorous use of the library resources undermines his contention his access to legal materials somehow obstructed his ability to present a defense.

Finally, appellant contends the services provided by PCC were inadequate.  Following trial, appellant complained about the timeliness and adequacy of investigative and support services provided by PCC.  The trial [court] rejected those complaints and stated:  "There appears to be a dispute between him and PCC, and my findings, based on what occurred during the trial, is that the person assigned to assist Mr. [Carrea] was in fact following through on various issues that were given to him to do."  The trial court was obviously in a far better position to determine the adequacy of the support PCC provided than we are and its findings are fully supported by the record.  The record shows the investigator was present in court at trial, met with appellant after court and on the weekend, prepared subpoenas for appellant, provided appellant with supplies, obtained evidence for appellant and obtained the services of an expert for appellant.  Thus, on this record we are in no position to disturb the trial court's factual findings as to the adequacy of the support appellant received from PCC.

(Id. at 16-18.)

On May 8, 2007, the trial court conducted a comprehensive hearing of all Carrea's discrete complaints about his access to the law library, copy services, telephone usage, the responsibilities and responsiveness of private conflict counsel and the investigative assistance Carrea received. (Lodgment No. 2, Rep.'s Tr.  vol. 2, 107-27.)  He explained his concerns articulately and with well-researched argument, and the transcript documents extensive interaction between the court and the parties.  (Id.)  In addition, the matter was reargued on June 29, 2007, in connection with Carrea's new trial motion.  (Id., Rep.'s Tr. vol. 7, 700-19.)  "[B]ased on what occurred during the trial," the trial court found the ancillary services Petitioner received were responsive to his requests for assistance.  (Id. at 727.)

The state court's factual determinations on these issues are objectively reasonable. Furthermore, the record substantiates those factual findings.  For example,  in a minute order dated May 8, 2007, the trial court found "the sheriff's [sic] are now in compliance and providing the defendant with what he needs[]" and instructed:  "PCC to provide access to witness's [sic] for the defendant by telephone."  (Lodgment No. 1, Clerk's Tr. at 0257.)  May 24, 2007 trial minutes note

that Carrea's PCC investigator, Michael Anselm, was present and "indicates that during trial he will meet with the defendant daily, in the evening at the jail, and will be discussing what the defendant's needs are regarding contacting witnesses and scheduling." (Id. at 0263.)  The trial court explained its objective ("I want to make sure the defendant has what he is entitled to constitutionally") and, at several junctures, the court verified Carrea was receiving services to which he was entitled. (See, e.g., Lodgment No. 2, Rep.'s Tr. vol. 2, 121-26; Lodgment No. 1, Clerk's Tr. at  32-37, 81-88, 257; see generally Lodgment No. 2, Rep.'s Tr. vol. 4, 300-65.)  Carrea invokes no United States Supreme Court authority which compels or even permits disturbing the state court result because Petitioner received allegedly deficient ancillary services.  The Respondent argues:  "In [Kane v. Garcia Espitia, 546 U.S. 9 (2005) (per curiam)], the Supreme Court noted that [Faretta v. California, 422 U.S. 806 (1975)] 'says nothing about any specific legal aid that the State owes a pro se criminal defendant,' and it held that this silence – that is, the lack of authority that provided relief – precluded habeas relief." (Answer Attach. #1 Mem. P. & A. 7:23-26, ECF No. 15 (quoting Kane, 546 U.S. at 11(reversing a grant of federal habeas relief for lack of a clearly established right under federal law to access a law library while the petitioner was in jail before trial) (citing Carey, 549 U.S. at 75-77 (absent a holding from the United States Supreme Court, "it cannot be said that the state court 'unreasonably appli[ed] clearly established Federal law' ")).)  The state court result on this ground is neither contrary to, nor an unreasonable application of, controlling federal law, nor is it an unreasonable determination of the facts from the record.  For these reasons, habeas relief on ground five should be **DENIED**.  28 U.S.C. § 2254(d).

### G.    Ground Six:  Illegal Upper-Term Sentence

Carrea contends he "was given an illegal sentence of the upper term by the trial judge decision instead of the jury as requested by the Petitioner." (Pet. 31, ECF No. 1.)  He contends he "informed the trial court the imposition of the upper term would be illegal, without the jury imposing it." (Id.)  Petitioner argues, "The trial judge did[n']t care about the procedural due process violation[]" and proceeded to sentence him to the upper term.  (Id.)

In Cunningham v. California, 549 U.S. 270 (2007), the United States Supreme Court invalidated California's determinate sentencing law insofar as it authorized a judge rather than the jury to find facts exposing a defendant to an upper-term sentence, applying Apprendi v. New Jersey, 530 U.S. 466, 468-69. 471 (2000), Blakely v. Washington, 542 U.S. 296 (2004), and United States v. Booker, 543 U.S. 220, 243-44 (2005) (converting the federal sentencing guidelines from mandatory to advisory to comport with the Sixth Amendment).  The Court explained:  "[U]nder the Sixth Amendment, any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence."  Id. at 281.  The Court identified Jones v. United States, 526 U.S. 227 (1999), and Apprendi, 530 U.S. at 468-69, 471, as recent precedent laying the foundation for its holding.  Id.; see also Almendarez-Torres v. United States, 523 U.S. 224, 241-46 (1998) (discussing recidivism and recognizing the prior conviction exception).  Cunningham explained that "California's DSL, and the Rules governing its application, direct[ed] the sentencing court to start with the middle term, and to move from that term only when the court itself finds and places on the record facts – whether related to the offense or the offender – beyond the elements of the charged offense."  Cunningham, 549 U.S. at 279.  "Because the DSL authorizes the judge, not the jury, to find the facts permitting an upper term sentence, the system cannot withstand measurement against our Sixth Amendment precedent."  Id. at 293 (footnote omitted).  "If the jury's verdict alone does not authorize the sentence, if instead, the judge must find an additional fact to impose the longer term, the Sixth Amendment requirement is not satisfied."  Id. at 290 (citing Blakely, 542 U.S. at 305).   The Cunningham Court concluded the "statutory maximum" for Apprendi purposes "is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*"  Id. at 288 (emphasis in original) (quoting Blakely, 542 U.S. at 303).

After Cunningham, the California Supreme Court clarified that the imposition of an upper term does not violate a defendant's jury trial right as long as one legally-sufficient aggravating factor justified it.  People v. Black ("Black II"), 41 Cal. 4th 799, 816, 161 P. 3d 1130, 1140, 62 Cal. Rptr. 3d 569, 581 (2007), cert. denied sub nom. Black v. California, 552 U.S. 1144 (2008)

("[I]mposition of the upper term does not infringe upon the defendant's constitutional right to jury trial so long as one legally sufficient aggravating circumstance has been found to exist by the jury, has been admitted by the defendant, or is justified based upon the defendant's record of prior convictions.")  This is true even if the sentencing court also engaged in additional judicial fact-finding.  Id. at 813, 161 P. 3d at 1138, 62 Cal. Rptr. 3d at 579; see Butler v. Curry, 528 F.3d 624, 643 (2008) ("[U]nder California law, only one aggravating factor is necessary to set the upper term as the maximum sentence . . . .").  "The United States Supreme Court consistently has stated that the right to a jury trial does not apply to the fact of a prior conviction."  Black II. 41 Cal. 4th at 818, 161 P. 3d. at  1143, 62 Cal. Rptr. 3d. at 583 (citing, inter alia, Cunningham, 549 U.S. at 288).  "[I]f one aggravating circumstance has been established in accordance with the constitutional requirements set forth in Blakely, the defendant is not 'legally entitled' to the middle term sentence, and the upper term sentence is the 'statutory maximum' . . . . "  Black II, 41 Cal. 4th at 813,161 P. 3d. at 1139, 62 Cal. Rptr. 3d at 580.

Carrea was sentenced July 20, 2007, after the Cunningham decision and in light of that authority, and after he had received one requested continuance of his sentencing.  (Lodgment No. 1, Clerk's Tr. at 0248-0249.)  His motion for a second continuance was argued and denied by the trial court for the reasons recited on the record.  (Lodgment No. 2, Rep.'s Tr. vol. 7, 727-30.)  He was sentenced to the upper term of five years on count one, plus one year on each of the prison priors, "for a total of two years consecutive to the five-year term, for a total of seven years."  (Id. at 736-37.)  The court explained its selection of the upper term:

> Mr. Christopher is before me today for sentencing following conviction on Penal Code 273.5(a), corporal injury to spouse or roommate.  He did admit the prior under Penal Code 273.5(e)(1), a prior offense within seven years, and admitted two prison priors under Penal Code 667.5(b).
>
> I have the probation officer's recommendation, which is for state prison at the upper term, and I have reviewed the factors in aggravation and mitigation. . . .  I do find that this would be an appropriate case for the upper term, particularly because his prior convictions are numerous and that his performance on probation and parole have been very unsatisfactory.  Also, he was on parole when the crime was committed.

(Id. at 733-34.)

10cv0928

As noted by Respondent, the state court of appeal "reasonably and properly rejected on the merits" Carrea's claim that his upper-term sentence was unlawful.  (Answer Attach. # 1 Mem. P. &. A 8:2-8, ECF No. 15.)  Furthermore, "although a defendant's probationary status does not come within the 'prior conviction' exception, a state court's interpretation to the contrary does not contravene AEDPA standards[]" because the Supreme Court has not given explicit direction. Kessee v. Mendoza-Powers, 574 F.3d 675, 678 (9th Cir. 2009) (applying Butler, 528 F.3d at 647). In this case, not only was Carrea on probation at the time of the underlying offense, but he admitted prior convictions.  For all these reasons, imposition of the upper-term sentence based on the prior-conviction exception to jury fact-finding comports with controlling United States Supreme Court authority and the facts of this case.  Carrea's claim for habeas relief on ground six should be **DENIED**.  28 U.S.C. § 2254(d).

### H.        Ground Seven:  Denial of Discovery From Police Department

On May 18, 2007, the trial court heard Carrea's motion seeking discovery from the personnel records of certain officers who investigated his case.  (Lodgment No. 2, Rep.'s Tr. vol. 3, 200-03.)  He relied on Pitchess v. Superior Court, 11 Cal. 3d 531, 522 P.2d 305, 113 Cal. Rptr. 897 (1974), superseded by statute as stated in City of San Jose v. Superior Court, 5 Cal. 4th 47, 50-51, 850 P.2d 621, 622, 19 Cal. Rptr. 2d 73, 75 (1993); see also Cal. Evid. Code § 1043 (West 2009) (authorizing such discovery in certain circumstances pursuant to subsequently codified procedures).  Representatives of the city attorney's office and the San Diego Police Department appeared at the hearing.  In denying Petitioner's motion, the trial court detailed multiple deficiencies, most prominently the absence of a factual foundation to support any ground on which that discovery would be appropriate.  (See Lodgment No. 2, Rep.'s Tr. vol. 3 at 200-03; see also Lodgment No. 1, Clerk's Tr. at 39-44, 92-105, 259.)

Carrea relied on Brady v. Maryland, 373 US 83, 87 (1963), and the California Constitution for his discovery requests related to three police detectives, contending due process entitled him to discover the identities and contact information of all persons who had filed complaints with the police department against those individuals alleging misconduct.  (Lodgment No. 1, Clerk's Tr. at

0039-0042.)  Here, Petitioner alleges that result violated his federal constitutional rights under the Fifth, Sixth, and Fourteenth Amendments.  (Pet. 33, ECF No. 1.)

> The petitioner requested the trial court May 18, 2007 for the San Diego County District Attorney and the San Diego City Police Department, to make available for examination and copy of [sic] all written records of complaints maintained by the department of officers testifying, due to the fact the San Diego Police Department, failed the racial profiling test of the federal government every time they were tested.  The petitioner was informed at the time that statements were given to the San Diego Police Department concerning officers of the department alleg[]ing the officers that testified and was to testify commit[t]ed acts of dishonesty; acts constituting false arrest, illegal search and seizure, and fabricating of charges and or evidence involving morally lax character.  The petitioner was informed (see Pitchess motion hearing transcripts/ Exhibit M) (see Pitchess motion exhibit N) the San Diego Police Department assigned personnel to investigate said complaints.  The petitioner was denied this discovery in violation of the United States Constitution.

(Id.)

The court of appeal denied Carrea habeas relief on this claim, finding that nothing he sought to discover from those files would have altered the outcome of his trial:  "In light of the overwhelming evidence of guilt provided [by] Brown, the apartment manager and the security officer, any failure to provide discovery with respect to the personnel files of the police officers who arrested plaintiff would not have prejudiced appellant's defense and thus would not support habeas relief."  (Lodgment No. 14, People v. Carrea, No. D051337, slip op. at 25.)  Absent prejudice, even if an unconstitutional trial error occurred, federal habeas relief is foreclosed.  See Brecht, 507 U.S. at 623; Bains, 204 F.3d at 977.  Accordingly, habeas relief on the basis alleged in ground seven should be **DENIED**.

## III.    CONCLUSION AND RECOMMENDATION

The Court submits this Report and Recommendation to United States District Judge William Q. Hayes under 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California.  For all the foregoing reasons, **IT IS HEREBY RECOMMENDED** this habeas Petition be **DENIED** in its entirety on grounds the Petitioner's custody violated no federal right.  **IT IS FURTHER RECOMMENDED** the Court

1  issue an Order (1) approving and adopting this Report and Recommendation and (2) directing that

2  judgment be entered denying the Petition.

3       **IT IS HEREBY ORDERED** no later than March 16, 2012, any party to this action may

4  file written objections with the Court and serve a copy on all parties.  The document should be

5  captioned "Objections to Report and Recommendation."

6       **IT IS FURTHER ORDERED** any Reply to the Objections shall be filed with the Court

7  and served on all parties no later than March 29, 2012.  The parties are advised that failure to file

8  objections within the specified time may waive the right to raise those objections on appeal of the

9  Court's Order.  <u>See</u> <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998); <u>Martinez v. Ylst</u>, 951

10 F.2d 1153, 1156 (9th Cir. 1991).

11

12 **DATED:**  February 17, 2012          _____

13                                  **HON. RUBEN B. BROOKS**
                                   **UNITED STATES MAGISTRATE JUDGE**

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28